## THE MAYOR AND COMMON COUNCIL OF THE CITY OF KOKOMO *v.* THE STATE, EX REL. ADAMS.

CITY.—*Donation to Railroad.*—*Petition for.*—*Pleading.*—*Mandamus.*—*Power of Common Council.*—*Interest.*—*Statute Construed.*—In an action by the State, on the relation of the president of a railroad company, against the mayor and common council of a city, for a mandate compelling the issue and delivery to such company of a certain amount in bonds of such city, the complaint alleged, that a petition was presented to the defendants by a majority of the resident freeholders of such city, representing that such company had been organized for the purpose of constructing a railroad from a certain point to such city, and asking the common council "to make a donation to said company of" a sum specified, to aid "in the construction of the said railroad, to be paid in the bonds of said city, within such time, and at such rate of interest, as" the common council should "deem proper," etc.; that, upon the report of a committee of the common council, that a majority of such freeholders had signed the petition, but without adopting such report, a resolution was adopted by the common council, declaring that such donation should be made, and directing that an ordinance making the same should be prepared; that such ordinance had been defeated; and that such railroad had been completed. A copy of the petition, and also of the proceedings of the council, were made exhibits.

*Held,* on demurrer, that such copies constitute no part of the complaint, but, having been treated as part thereof by the court below, may be so treated by the Supreme Court, on appeal.

*Held,* also, that the complaint is sufficient as presenting *prima facie* ground for issuing the writ of mandate demanded.

*Held,* also, that, under section 60 of the act of March 14th, 1867, (1 R. S. 1876, p. 267,) authorizing the incorporation of cities, etc., a writ of mandate is the only proper remedy in such case.

The Mayor, etc., of the City of Kokomo v. The State, ex rel. Adams.

---

*Held*, also, that the petition sufficiently describes the point to which the road was to be completed.

*Held*, also, no terms upon which such bonds should issue, and no rate of interest thereon, having been specified in the petition, it may be construed as asking the issue of a single bond for the whole amount, without interest, the council having no power to fix a rate of interest.

SAME.—*Interest of Councilman in Donation.—Defence.*—The fact, that at the time such petition was presented, and thence until the commencement of the action for a mandate, one of the members of the common council had been a stockholder, director and officer of such railroad company, did not disqualify him to act upon the petition, or the common council to pass an ordinance making the donation, and constitutes no defence to the action.

SAME.—*Estoppel.—Legality of Petition.*—The action of the common council, in adopting a resolution declaring that the donation petitioned for should be made, does not estop the defendants, in such action, from denying that such petition had been signed by a majority of the resident freeholders.

SAME.—*Pleading.*—An answer in such action, alleging that such petition had not been signed by a majority of the resident freeholders of the city, is sufficient on demurrer.

SAME.—*Statute Construed.—City of Kokomo.—Curative Act.*—The act of March 8th, 1875, (Acts 1875, Reg. Sess., p. 92,) legalizing certain acts of the common council of the city of Kokomo, does not apply in this action.

SAME.—*Consideration for Donation.*—Where, in such action, the petition for the donation shows that the railroad is not yet completed, and the donation is asked because the construction of such railroad will enhance the value of the property of the petitioners, an answer alleging a want of consideration for such donation is insufficient.

SAME.—*Fraud in Procuring Signatures.—Remonstrance.—Signing in Blank.— Principal and Agent.*—The defendant in such action answered, that the signatures to such petition had been procured by fraud, in that the petition had been signed in blank as to the amount to be donated, upon the representation of the person circulating the petition for signatures, that the blank would be filled by inserting an amount much less than had been afterward actually inserted.

*Held*, on demurrer, that the answer is insufficient.

*Held*, also, that such objection should have been presented to the common council by remonstrance.

*Held*, also, there being no averment in the answer that such representation had been relied on, that petitioners, by so signing in blank, conferred upon the person to whom the petition was by them entrusted an implied authority to fill such blank.

*Held*, also, that, under such petition the city would be entitled to receive no stock in such company, and therefore that false representations as to the amount of stock to be received by the city were immaterial.

From the Howard Circuit Court.

*J. O'Brien* and *J. W. Kern*, for appellant.

*N. R. Linsday*, *M. Bell* and *M. McDowell*, for appellee.

PERKINS, C. J.—A petition, in words and figures following, was presented to the common council of the city of Kokomo, on the 31st of October, 1873.

The petition to the council in this case is in the following words:

" To the Honorable Mayor and Common Council of the City of Kokomo:

"The undersigned petitioners, being a majority of the resident freeholders of the city of Kokomo, in the county of Howard, in the State of Indiana, represent to your honorable body, that the Frankfort and Kokomo Railroad Company is a duly organized company, incorporated under and pursuant to the laws of Indiana, for the purpose of constructing, owning and operating a railroad from the town of Frankfort, in the county of Clinton, in the State of Indiana, to the city of Kokomo aforesaid, and believing that said railroad, when completed, will greatly enhance the value of the property of this city and promote the general interest of the citizens thereof: We respectfully ask your honorable body to make a donation to said company of $8,000, to aid the same in the construction of the said railroad, to be paid in the bonds of said city, within such a time, and at such a rate of interest, as you may deem proper, in accordance with the provisions and requirements of the 60th section of 'An act,' etc., approved March 14th, 1867, and the provisions of an act entitled 'An act to enable cities to aid in the construction of railroads, hydraulic companies and water-powers, and declaring an emergency,' approved May the 4th, 1869."

The petition was presented under the following statutory provisions:

" SECTION 1. *Be it enacted by the General Assembly of the State of Indiana*, That any city, incorporated under the

general law of this State, upon petition of a majority of the resident freeholders of such city, may hereafter subscribe to the stock of any railroad, hydraulic company, or water-power, running into or through such city, or near the corporate limits of said city, or to make, on petition of the majority of the resident freeholders of such city, donations in money or the bonds of such city, to aid in the construction of any such railroad, hydraulic companies, or water-power; subject, however, to the limitations, direction and restriction named in the provisos to the sixtieth section of the act entitled, 'An act to repeal all general laws now in force for the incorporation of cities, prescribing their powers and rights, and the manner in which they shall exercise the same, and to regulate such other matters as properly pertain thereto,' approved March 14th, 1867."

This act was approved May 4th, 1869. 1 R. S. 1876, p. 299.

The 60th section (1 R. S. 1876, p. 298,) of the act of 1867 referred to is this:

" Sec. 60. Any incorporated city under this act shall have power to borrow money, to subscribe to the stock of any plank road, macadamized road, or railroad, running into or through such city, * * * to make donations in money or bonds of such city, to aid in construction of such roads * * * , only on petition of a majority of the resident freeholders thereof: *Provided,* That said donations shall not be payable either in money or bonds, until the roads * * * , in aid of which it is given, shall be so far completed as to admit the running of trains from the point of commencement to such point or points as are designated in the petition, in case of a railroad, * * * ; and when so far completed, it shall be obligatory on the common council of said city to contract and do whatever may be necessary, to carry into effect the substantial meaning of such petition, and the obligation herein enjoined may be enforced in the courts of this State .

having competent jurisdiction, on the application of any signer of such petition, or president of any road * in behalf of which such donation may have been made, at any time after said petition or petitions have been presented to such common council, and for any debt created in pursuance of the provisions of this section in carrying out the intentions of the petitioners aforesaid, the common council shall add to [the tax] duplicate of such years thereafter, a levy sufficient to pay the annual interest on such debt or loan with an addition of not less than five cents on the one hundred dollars to create a sinking-fund for the liquidation of the principal thereof, which fund with all the increase thereof, shall be applied to the payment of such debt and to no other purpose."

On the 14th day of December, 1874, the complaint in this cause was filed in the name of the State, on the relation of Coe Adams, president of the Frankfort and Kokomo Railroad Company, alleging the corporate existence of the company; that the line of its road extended from Frankfort, in Clinton county, to Kokomo, in Howard county, Indiana; that it was completed; that a majority of the resident freeholders of the city of Kokomo had signed the petition above copied, in reliance upon which being granted by the city council, the road had been completed; averring a demand for the bonds, and praying a mandate to the city council to issue them, etc.

A copy of the petition was made a part of the complaint. Accompanying the complaint, as an exhibit, was a transcript of the proceedings of the city council had in relation to the matter of the donation petitioned for.

The making of these proceedings an exhibit in the complaint, and filing them with it, did not make them a part of it. *Knight* v. *The Flatrock, etc., Turnpike Co.*, 45 Ind. 134. But they were treated as being so below, and may, for the purposes of this case, be treated in the same way here. A paragraph of answer was held bad, on demurrer, as contradicting the record of the city council as

to the passage of a resolution, thus assuming it to be a part of the complaint.

This question of contradiction will be presented before the final disposition of this cause, either by a reply to the answer or upon objections to evidence on the trial; hence, it may as well be settled now.

The record of the proceedings of the city council shows, that, the petition having been presented, a committee was appointed to examine it; that on the 3d of November, being three days after the petition was presented, a remonstrance was presented; that, on the 5th of November, the committee reported that a majority of the freeholders of the city had signed the petition; that, on the 5th of November, a resolution was adopted, declaring that the city would donate eight thousand dollars to the road, and directing the city attorney to prepare an ordinance making the appropriation. This resolution was adopted by four votes, there being two votes against it, and two members of the council not in attendance at the meeting; so that the resolution was passed by the votes of just one-half of the members of the council. The resolution was introduced and voted for by John M. Leach, who was at the time a stockholder in, and one of the directors and the treasurer of, the railroad company.

The record of the council further shows, that on the 14th of November, nine days subsequent to the adoption of the above-mentioned resolution, an ordinance, providing for a donation of eight thousand dollars, was introduced and read a third time, whereupon Mr. Leach moved that the rules be suspended and the ordinance read a second time, which motion was lost, receiving but four votes in its favor. The ordinance never was adopted.

The complaint was in two paragraphs.

Demurrer to the complaint, assigning two causes:

1. Want of sufficient facts; and,

2. Want of capacity in the plaintiff to sue the defendant.

The demurrer was overruled, and exception taken.

The return to the alternative writ and answer to the complaint are in five paragraphs :

The first paragraph alleges, that John M. Leach was, at the time of the signing of the petition referred to in the complaint, and at the time of the presentation of the same to the city council of the city of Kokomo, and at the time of the demand upon the city for the issuance of bonds for eight thousand dollars, as a donation, in pursuance of the petition of citizens, and up to and at the time of bringing the suit, a member of the city council of the city of Kokomo, Indiana, and at the same time a member of the Frankfort & Kokomo Railroad Company, and the owner of one hundred and five shares of her capital stock, and the treasurer of the Frankfort & Kokomo Railroad Company, duly elected by her board of directors, and was one of the directors of the company; and that, because said Leach was such member of the common council, also of the railroad company, the defendants were, at all times from the date of presenting the petition to the common council of Kokomo until the date of the commencement of suit against the defendants, wholly unable to pass a valid ordinance, and issue bonds as prayed for in the complaint.

The second paragraph alleges, that there never was a majority of the resident freeholders' names attached to the petition, and gives the number of freeholders residing in the city, the number of names attached to the petition, the number that were not residents of the city, the number whose names were attached who were not at the time freeholders, and the number whose names were attached without their authority, and the number who had, after signing said petition, withdrawn their names by signing a remonstrance to it, leaving but two hundred and one persons who were legal signers to said petition; while the whole number of freeholders residing

in the city was five hundred and thirty-eight, more than twice the number of legal signers.

The third paragraph alleges, that, at the date and time of signing and presenting the petition described in the complaint, there was no legal incorporation of the city of Kokomo, and that there was no valid, legal incorporation until March 5th, 1875.

The fourth paragraph alleges, that, at the time of the signing of the petition and the presentation thereof to the city council, the Frankfort & Kokomo Railroad Company was already incorporated, and the road in process of construction, and that there was no consideration whatever for the proposition to donate eight thousand dollars, contained in the petition of citizens.

The fifth paragraph alleges, that there were fraudulent representations and practices on the part of the officers and employees of the plaintiff's relator, the railroad company, in procuring the signatures of citizens to the petitions for a donation of eight thousand dollars by the city, and avers and charges the facts constituting the fraudulent representations complained of.

There was a demurrrer to each paragraph of the answer, as follows:

To the first, because it did not contain facts sufficient to constitute a defence.

To the second, there were two causes of demurrer: 1st. Want of jurisdiction to hear and determine the matters therein alleged; 2d. Want of sufficient facts.

To the third, fourth and fifth paragraphs, that they did not contain sufficient facts.

Demurrers sustained, and exceptions taken.

The defendant elected to stand upon her answer; whereupon the court awarded a mandate, commanding the city council to pass an ordinance for the issue of bonds to the amount, in the aggregate, of eight thousand dollars, to which award of mandate the defendant excepted, etc.

Appeal to the Supreme Court.

The first question arising is, did the complaint make a case for a mandate, upon the application of the railroad company?

Without the aid of a statute, the company could not maintain this suit for a mandate, according to the case of Sankey v. The Terre Haute, etc., R. R. Co., 42 Ind. 402, and authorities there cited. But section 60 of the act of 1867, hereinbefore copied, declares, that "it shall be obligatory on the common council of said city to contract and do whatever may be necessary, to carry into effect the substantial meaning of such petition, and the obligation herein enjoined may be enforced in the courts of this State having competent jurisdiction, on the application of any signer of such petition, or president of any road    *    in behalf of which such donation may have been made."

How enforced, we may next enquire. The act required to be performed by the city council is, to contract with the railroad company by issuing a bond or bonds to it, in compliance with the petition of a majority of the freeholders, etc. That act, upon a proper petition, it is the absolute duty of the council to perform. Where the performance of such an act becomes the absolute duty of a corporation, mandate is the proper, indeed the only, remedy. Section 739, p. 296, 2 R. S. 1876, is as follows:

"Writs of mandate may be issued to any inferior tribunal, corporation, board or person, to compel the performance of an act which the law specially enjoins; or, a duty resulting from an office, trust or station."

Does the complaint in this suit allege the existence of a state of facts, upon which the law made it the duty of the city council of Kokomo to issue a donation bond or bonds to the Frankfort and Kokomo Railroad Company? The facts upon which, by law, that duty would arise, are a petition to the council, signed by a majority of the resident freeholders of the city, specifying the road to which the donation asked was to be made, the amount of the

·donation, and the point to which the road must be completed before the donation bonds might be delivered by the city.

The petition in this case fills the measure of the statute, and is free from extraneous, irrelevant matters.

It is suggested that it does not name a point to which ·the road must be completed before the bonds may be ·delivered; but we think it does; that it names the end, :the final terminus of the road as the point.

It is objected that the petition does not name a rate of ·interest. This objection is true in fact. It does not, but refers that subject to the council. When we consider ·that the interest upon a bond is a part of the burden it lays upon the people, and that the council has not the ·power, in its discretion, to impose such burdens, but only ·upon the petition of the freeholders, we think we should construe the petition in this case as one asking a donation of eight thousand dollars, in amount, without interest. This construction removes from the petition, also, a feature which, it is claimed, submits ·to the discretion of the ·council an item in the terms in which the bonds may ·issue, and thus makes the case one in which there is not ·such an absolute duty to be performed as can be coerced ·by mandate. We think the issue of one bond, in this ·case, to the proper corporation, in the sum of eight thou-·sand dollars, bearing no rate of interest, would be such a ·compliance with the petition and statutes as would pre-·clude interference on the part of the courts, by way of mandate or otherwise. At the same time, if the council saw fit to issue the bond or bonds, bearing some rate of interest, without delay, we do not decide that the act would be illegal, in view of the petition; but the absolute legal obligation is to issue eight thousand dollars, in amount, of bonds. See *State* v. *The Board, etc.,* 45 Ind. 501. We think the complaint was based upon what appeared on its face, and was alleged in the complaint, to be

a sufficient petition; that it made a *prima facie* case under the statutes, in which it was the duty of the city council to make the donation petitioned for, and was the right and duty of the court to issue a mandate, commanding the council to issue the donation bond or bonds.

We turn to the answer. The first paragraph of it, alleging the relation of John M. Leach, a member of the city council, to the railroad company, in the opinion of the court, is insufficient. The petition of a majority of the freeholders of the city would establish the right of the railroad company to the donation. It was the duty of the city council to officially ascertain and declare, whether such a petition was presented to it, before it proceeded to issue bonds for the donation. Till such a petition was presented, the council had no power to issue such bonds; and, when such a petition was presented, the council had no right to refuse to issue them on the completion of the road to the designated point; a fact, also, to be ascertained by the council.

"And when so far completed," says the statute, "it shall be obligatory on the common council," etc., "and the obligation herein enjoined may be enforced in the courts," etc.

Under the statute, donation bonds are not issued or withheld in the disrcetion or upon the judgment of the council. They are issued, as has been said already, in compliance with the properly framed written request of a majority of the freeholders of the city. When such request is presented, it is the duty of the council to comply with it by issuing bonds. Till such request is presented, the council has no power to issue a bond.

Such being the case, we think the facts alleged in the first paragraph of the answer were not such as created a disqualification of Leach to act as councilman, in the matter of the donation.

We proceed to the second paragraph of answer. It avers that the petition to the council to make a donation

was not signed by a majority of the resident freeholders of the city; that there was at that date a certain number of resident freeholders in the city, giving the number, that a certain number signed the petition, stating the number, thus showing that a majority did not sign. We think the court erred in sustaining the demurrer to this paragraph of answer. This ruling is defended upon the grounds, that the answer contradicts the record of the city council, and that the council is estopped to deny that the petition was sufficiently signed.

If the city had issued the bonds, and especially if they had passed into the hands of a *bona fide* holder, and this was a suit on such bonds, a different question from that now before us might be presented. Here, it will be remembered, the city has not issued the bonds, and this is a suit to compel their issue; and the city council answered, as a justification of her refusal, that the condition has not been performed, the performance of which alone gives her the power to issue them, viz., the signing of a petition therefor by a majority of the resident freeholders. This answer denies a material fact, that must be found to exist before the power to issue the bonds vests in the council. See *Rhodes* v. *Piper*, 40 Ind. 369, and *Knight* v. *The Flatrock, etc., Turnpike Co.*, 45 Ind. 134. It is urged that the council has decided that the fact exists. The record of the council does not show such a decision. See *Noble* v. *The City of Vincennes*, 42 Ind. 125. It shows that a committee of the council had reported that the fact existed, but it fails to show that that report had been adopted, concurred in, confirmed, or in any manner acted upon by the council. It is claimed, however, that as the council adopted a resolution that it would make the donation, and directed the city attorney to draft an ordinance, etc., the conclusive presumption arises, that the council had concurred in the report of the committee. If, as we have said, this were a suit by a *bona fide* holder of an issued bond, such presumption might arise; but, in this suit to

compel the issue of the bonds, we think the presumption that arises as to concurrence in the report of the committee is no stronger, at all events, than a *prima facie* one, and such a presumption does not preclude a denial of the fact by plea or answer. Such presumption may be rebutted. See *Langsdale* v. *Bonton*, 12 Ind. 467.

Nor is there any estoppel in this case. An estoppel could only arise in favor of a party who had *bona fide* acted upon the fact of the passage of the resolution of the council. The railroad company in this case is not such a party. If it derived its knowledge of the passage of the resolution from the record, that would disclose to it, at the same time, that the council had failed, so far as appeared, before passing it, to determine the number of the petitioners. This would have put the company on inquiry. Further, nine days after the passage of the resolution, the council refused to pass the ordinance directed in the resolution to be prepared, of which refusal the railroad company had notice, her treasurer and one of her directors, Mr. Leach, being present, and participating in it when this action of the council occurred. The railroad could scarcely have involved itself much upon the faith of the resolution mentioned.

It is further claimed that all the acts of the council in the premises are validated by the curative act of March 8th, 1875. Acts 1875, Reg. Sess., p. 92. That act declares that all official acts of the common council of Kokomo, done under ordinances and resolutions, are thereby legalized.

This statute has no application to the case before us. And it is proper that it should be remembered here, that the statute authorizing the city council to vote away the property of the citizens should be construed with reasonable strictness, and its provisions should be strictly complied with. All the guards it furnishes for the security of the citizen against hasty and injudicious action should be faithfully maintained.

The third paragraph of answer is abandoned by counsel for appellant in their brief.

The fourth paragraph, alleging want of consideration, is shown by the record to be false in fact; at the time of the petition, the road was not completed. Means and credit were needed to enable the company to complete it. The consideration for the donation is stated in the petition to be the enhancement of the value of the property, and the promotion of the general interest of the citizens by the completion of the road.

The fifth alleges, the use of means claimed to be fraudulent, in obtaining signatures to the petition, viz.: that the petition was signed in blank, as to the amount, and afterward filled up with an amount different from that stated by the canvasser for signatures to those signing it as the sum to be asked for; and that false representations were made as to the amount of the stock subscribed to the company; but it is not alleged in the answer, that the signers relied upon these representations, and it does not appear in this paragraph of answer, that they are now objecting on this ground, or any other. They might have objected at the proper time by remonstrance. *Noble* v. *The City of Vincennes*, 42 Ind. 125. And it is averred in the second paragraph of answer, that objection was thus made in this case.

As to signing articles in blank, the law as to contracts is said by Parsons to be this: "If one signs his name to a bill or note, leaving a blank for the sum, and intrusts it to another, this is *prima facie* evidence of authority; in England, to insert any sum that the stamp will cover, and for any purpose; and in this country, to insert an indefinite sum." 1 Parsons Notes & Bills, 109.

If this would be the law as to the signing of such petitions as that in this case, then, as the paragraph of answer does not aver that the signers relied at all upon the representations, the petition, as to its validity in this respect, will be governed by the general rule of law above

stated    But this point is not necessarily important, as the paragraph of answer may be amended before another trial.

And as to the amount of stock taken in the corporation, the donation was not to be made upon this, but on and for the completion of the road.    The city was not to receive any stock; she was to receive no dividends.    The petitioners wanted the road for the general public good, and were asking the city to make the donation on account thereof.

We think the fifth paragraph of answer insufficient.

But, for the error in sustaining the demurrer to the second paragraph of answer, the judgment must be reversed.

The judgment is reversed with costs, and the cause remanded for further proceedings, in accordance with this opinion.